UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID EARL RAY GALLEGOS,

Plaintiff,

v.

TRACI CARTER, et al.,

Defendants.

CASE NO. 2:25-cv-01760-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: **June 17, 2026**

This prisoner civil rights action has been referred to United States Magistrate Judge David W. Christel. Before the Court for consideration is a combined motion to dismiss and for summary judgment filed by Defendants Traci Carter and Jayda Roman.[1] Dkt. 13. Because Defendants submit evidence beyond the pleadings for Defendant Carter only, *see* Dkt. 13 at 7–8 (citing Dkt. 16), the Court reviews the sufficiency of Plaintiff's claims against Defendant Roman under the motion to dismiss standard and his claims against Defendant Carter under the summary judgment standard.

---

[1] Defendant Roman's name incorrectly appears as "Jayden" in Plaintiff's pleading and in the docket in this case. The Court uses Defendant Roman's correct name in this Report and Recommendation.

REPORT AND RECOMMENDATION - 1

Upon review, the Court finds Plaintiff has failed to state a viable § 1983 claim against Defendant Roman and further finds that Plaintiff has failed to rebut Defendants' summary judgment showing that Defendant Carter provided constitutionally sufficient mental health treatment in response to Plaintiff's medical needs. Thus, the Court recommends Defendants' combined motion to dismiss and for summary judgment (Dkt. 13) be granted.

## I.   BACKGROUND

Plaintiff, who is currently confined at Monroe Correctional Complex ("MCC"), brings this U.S.C. § 1983 action concerning the conditions of confinement at that facility. In his second amended complaint, Plaintiff alleges that Defendant Carter, a psych associate, and Defendant Roman, a health services administrator, were deliberately indifferent to his serious mental health needs in violation of the Eighth Amendment. Dkt. 12.

Plaintiff alleges that on June 27, 2024, he presented to Defendant Carter in a state of mental distress and reported that he was not safe and feared self-harm. *Id.* at 4. According to Plaintiff, Defendant Carter told him to return to his cell, stating there was "nothing she could do because it was part of my mental health." *Id.* at 4–5. Plaintiff alleges that he then engaged in self-harm, injuring his right hand. *Id.* at 5. Plaintiff further alleges he went to medical and was given an x-ray. *Id.*

Next, Plaintiff alleges that on January 24, 2025, he informed Defendant Carter that he was in distress and feared self-harm. *Id.* Plaintiff alleges that Defendant Carter reacted in the same manner, did not offer him a session, and told him to return to his cell. *Id.* Plaintiff alleges he again engaged in self-harm, injured his right hand, reported the injury to medical, and received an x-ray. *Id.*

Plaintiff further alleges that on March 7, 2025, he informed Defendant Carter that he was "tripping out" and "worried that [he] was not safe and needed something to do." *Id.* at 6. Plaintiff

REPORT AND RECOMMENDATION - 2

alleges Defendant Carter directed Plaintiff to return to his cell. *Id.* Plaintiff alleges that he thereafter engaged in self-harm to his right hand. *Id.*

Plaintiff alleges that on March 9, 2025, he was transported to an outside emergency room, where he was diagnosed with a fracture of his right hand and informed that he had sustained permanent cartilage damage that would result in chronic pain. *Id.* at 6–7.

With respect to Defendant Roman, Plaintiff alleges that, on January 30, 2025, he submitted grievances regarding his mental health care, stating he "might" need an evaluation to help with his desire to self-harm. *Id.* at 5. Defendant Roman allegedly affirmed that Defendant Carter was providing treatment and denied the grievance and subsequent appeal. *Id.*

Plaintiff alleges that similar incidents involving the defendants occurred on eight unspecified occasions, resulting in permanent injury to his right hand, including chronic pain and deformity. *Id.* at 6–7. Plaintiff seeks $300,000 from each defendant. *Id.* at 9.

On January 22, 2026, Defendants Carter and Roman filed a combined motion to dismiss and motion for summary judgment. Dkt. 13. In support of the motion for summary judgment, Defendants filed the declaration of Defendant Carter and her contemporaneous clinical notes under seal. Dkt. 16. Defendants did not submit evidence specifically pertaining to Plaintiff's claim against Defendant Roman, nor did they present argument beyond the sufficiency of the pleadings against her. *See* Dkt. 13.

On March 11, 2026, Defendants filed a notice pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), advising Plaintiff of the requirements for responding to a motion for summary judgment. Dkt. 20. Although Defendants represented that the *Rand* notice was served contemporaneously with the dispositive motion, the Court exercised caution and extended Plaintiff's deadline to respond to the motion until April 17, 2026. Dkt. 24.

REPORT AND RECOMMENDATION - 3

Plaintiff timely filed a response to Defendants' motion on April 16, 2026. Dkt. 25. Defendants thereafter filed a timely reply. Dkt. 27. Plaintiff subsequently filed a supplement to his response and a sur-reply. Dkts. 28, 29. The Court notes that Plaintiff's supplement is substantially identical to his original response, with only minor differences in formatting and administrative information. *Compare* Dkt. 25 *with* Dkt. 28. Also, Plaintiff did not seek leave to file the sur-reply, which contains only additional argument and does not include additional evidentiary materials or seek to strike materials contained in Defendants' reply. Thus, Plaintiff's sur-reply does not comply with this Court's local rules and will not be considered by the Court. Local Rules, Wash. W.D. LCR 7(g) ("Extraneous argument or sur-reply filed for any [reason other than to strike materials submitted in reply] will not be considered.").

Defendants' combined motion to dismiss and for summary judgment is fully briefed and ready for consideration by the Court.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss Standard

A motion to dismiss can be granted only if a plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

REPORT AND RECOMMENDATION - 4

statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

**B.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute,

REPORT AND RECOMMENDATION - 5

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III.   DISCUSSION

**A.    Defendant Carter**

Defendants argue they are entitled to summary judgment on Plaintiff's claim against Defendant Carter on qualified immunity grounds. Dkt. 13 at 7–8. Plaintiff argues that because he was not prevented from engaging in self-harm while under Defendant Carter's care, she is liable for deliberate indifference to his serous medical needs. *See* Dkt. 25 at 4–6.

1.   Applicable Law

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) (as amended). The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236.. "[I]n deciding whether qualified immunity applies, [the court] ask[s] two questions: (1) did the officer violate a constitutional right, and (2) was that right clearly established at the time of the events at issue?" *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022) (internal quotation marks omitted). Courts may address these two prongs in either order. *Pearson*, 555 U.S. at 236. Thus, if the Court first finds "there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane*, 939 F.3d at 950.

REPORT AND RECOMMENDATION - 6

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," which is a violation of the Eighth Amendment's guarantee against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992); *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). An Eighth Amendment deliberate indifference claim has two elements: (1) the plaintiff had a serious medical need and (2) the defendant responded to that need with deliberate indifference. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc).

For the first element, a medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). The following are examples of serious medical needs: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain" *Id.* at 1059–60.

For the second element, a plaintiff must show the defendant responded to his serious medical need with deliberate indifference. "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). This second element requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.*

A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate

REPORT AND RECOMMENDATION - 7

health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Ortez v. Wash. Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (liability arises under § 1983 only if defendants are alleged to participate in, direct, or knowingly fail to prevent a constitutional violation).

"A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi* 391 F.3d at 1060. Further, a mere difference of opinion about treatment between plaintiff and prison medical authorities "does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). A prisoner must instead show the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *see also Toguchi*, 391 F.3d at 1058.

2.  Defendants' Evidence

Defendants submit the declaration of Defendant Carter, which includes contemporaneous clinical notes documenting several of her interactions with Plaintiff during the period that he was under her care from June 2024 until May 2025. Dkt. 16.

First, in her notes dated June 27, 2024, Defendant Carter recorded that she approached Plaintiff as he was returning to his cell and informed him that he was on her mental health caseload. *Id.* at 5. Defendant Carter reported that Plaintiff disclosed that he had engaged in self-harm two days earlier and that he had already reported the incident to other mental health staff. *Id.* Defendant Carter further reported that she confirmed with Plaintiff whether he reported his self-harm to medical staff and whether his self-injury had been assessed. *Id.* Defendant Carter

REPORT AND RECOMMENDATION - 8

advised Plaintiff that the following day would be appropriate for an individual assessment session to discuss the self-harm incident, and Plaintiff agreed to attend such a session. *Id.* Defendant Carter also reported that she would consult with supervisory and psychiatric staff and continue routine follow-up. *Id.* Defendant Carter recorded that the risks and benefits of this recommended intervention were explained and "patient consents." *Id.*

In her notes taken the following day, Defendant Carter recorded that she met with Plaintiff for an individual session. *Id.* at 7. Defendant Carter reported that the session focused on Plaintiff's concerns regarding medication, including his report of delusional beliefs and auditory hallucinations. *Id.* Defendant Carter further recorded that Plaintiff did not report suicidal ideation or self-harm during the session. *Id.* Defendant Carter documented other clinical observations, including that Plaintiff presented with appropriate hygiene, maintained eye contact, and demonstrated organized thought processes, and she reported that he was not observed responding to internal stimuli. Looking forward, Defendant Carter reported that she planned to continue monitoring Plaintiff and provide ongoing treatment, including weekly observation and twice-monthly individual sessions. *Id.*

Next, in her notes dated January 24, 2025, Defendant Carter recorded that she met with Plaintiff and discussed concerns raised by other staff that he appeared off baseline, had been observed responding to internal stimuli, and was not taking medications. *Id.* at 9. Defendant Carter further reported that Plaintiff stated he had engaged in self-harm approximately one week earlier by hitting his hand against a wall. *Id.* Defendant Carter further recorded that Plaintiff stated, "I want to break my hand" and expressed a desire to go to the hospital. *Id.* Defendant Carter reported that she asked follow-up questions regarding his motivations and his history of self-harm. *Id.* Defendant Carter reported that she gave Plaintiff space to share his frustrations,

REPORT AND RECOMMENDATION - 9

which he reported as helpful. *Id.* She also reported that Plaintiff denied thoughts or plans of suicidal ideation. *Id*

As for next steps, Defendant Carter stated that she would continue to consult with supervisory and psychiatric staff and maintain ongoing bi-monthly sessions. *Id.* Defendant Carter further recorded that she determined that a higher level of care was not warranted at that time, explaining that Plaintiff's reported desire to break his hand reflected a chronic pattern of self-injury, that his hand was treated by medical when swollen, and that his "chronic desire to injure himself will not be resolved with a trip to the [close observation area]." *Id.*

In her notes dated March 6, 2025, Defendant Carter recorded that she spoke with Plaintiff during rounds and that the interaction concerned Plaintiff's request that she provide a statement for use in court proceedings. *Id.* at 11. Defendant Carter reported that she consulted with her supervisor and informed Plaintiff that she could not provide such a statement. *Id.* Defendant Carter recorded Plaintiff's response that she would need to provide a statement if subpoenaed, then noted that she "did not further engage in dialogue" with Plaintiff. *Id.*

She then documented her plan to consult with her supervisor, psychiatry, and MDT and continue monthly individual sessions with Plaintiff. *Id.* The contemporaneous notes of this interaction do not include any reported concerns of self-harm or suicidal ideation by Plaintiff. *Id.*

In her notes dated May 9, 2025, Defendant Carter recorded that she met with Plaintiff for an individual session and discussed a recent grievance he filed, which reported that "nobody came to see him" and "nobody provided coping skills." *Id.* at 13. Defendant Carter reported that Plaintiff expressed frustration with mental health assessments and stated that he believed they were ineffective because his mental state could change rapidly. *Id.* Defendant Carter recorded that Plaintiff stated he had a history of self-harm but indicated that it had been "a while" since his most recent incident because he felt the providers had "did him a solid," which Defendant Carter

REPORT AND RECOMMENDATION - 10

recorded was a reference to a sublocade shot. *Id.* Defendant Carter also reported that she brought a book about suicide treatment to the session for Plaintiff to go through and review based on a prior request he made for an organization he was starting. *Id.* Defendant Carter reported that Plaintiff stated that starting this organization was "keeping him going." *Id.*

Defendant Carter next reported that she attempted to review Plaintiff's treatment plan and discuss a recent change in his diagnosis. *Id.* She reported that Plaintiff shared he did not agree with the new diagnosis and, thereafter, the session deteriorated. *Id.* She further documented that Plaintiff left the session, she believed the therapeutic relationship had broken down, and that she would consult with the treatment team regarding transferring Plaintiff to another clinician. *Id.* Defendant Carter documented clinical observations about Plaintiff's disposition and recorded that Plaintiff did not report suicidal ideation or plans for self-harm during the session. *Id.*

Finally, at the bottom of each contemporaneous note described above, Defendant Carter recorded that the risks and benefits of her recommended interventions were explained and "patient consents." *Id.* at 7, 9, 11, 13.

3.  Plaintiff's Evidence

Plaintiff submits records reflecting his requests for mental health services and subsequent medical treatment. Dkt. 25 at 8–12.

Plaintiff's records reflect that Plaintiff submitted a resolution request on November 14, 2024, stating his medication was not effective, that he had suicidal ideation, and heard voices telling him to self-harm. *Id.* at 8. Nonparty Kathleen Bechler then submitted a request for mental health assessment on November 18, 2024. *Id.* The disposition of that request, which was signed by Defendant Carter on November 18, 2024, indicates that Plaintiff was seen by his primary clinician the same day he filed his resolution request. *Id.* The disposition also states that Plaintiff

REPORT AND RECOMMENDATION - 11

was referred to a psychiatric prescriber for a follow-up and that alternative housing was not required at that time. *Id.*

Next, Plaintiff's records reflect that he submitted a resolution request on December 9, 2024, informing staff that he committed self-harm because he was placed in administrative segregation. *Id.* at 9. Nonparty L. Stemler subsequently submitted a request for mental health assessment on December 12, 2024. *Id.* The disposition of that request, which was signed by Defendant Carter on December 13, 2024, indicates that Plaintiff was seen by his primary clinician and discussed his recent self-harm on December 13, 2024. *Id.* The disposition further indicates that Plaintiff was referred to his primary therapist and that alternative housing was not required. *Id.*

Medical records dated March 9, 2025, reflect that Plaintiff was evaluated in an emergency room following self-inflicted injury to his right hand. *Id.* at 11–12. The records indicate that Plaintiff reported that the injury occurred after he intentionally struck a concrete wall. *Id.* The records further indicate that Plaintiff was diagnosed with a closed fracture, prescribed hydrocodone, returned to custody, and instructed to follow up with orthopedic care in two weeks. *Id.*

Finally, further medical records dated March 21, 2025, reflect that follow-up imaging of Plaintiff's right hand revealed a healed fracture of the right fifth metacarpal with "mild residual deformity" and "markedly decreased" swelling. *Id.*

4.   Analysis

Even viewing the evidence in the light most favorable to Plaintiff, the record does not support a reasonable inference that Defendant Carter subjectively recognized and deliberately disregarded a substantial risk of serious harm as required to show a constitutional violation in this case. *See Farmer*, 511 U.S. at 837. Rather that providing constitutionally deficient care, the

REPORT AND RECOMMENDATION - 12

evidence demonstrates that, in performing her role as a psych associate, Defendant Carter repeatedly assessed Plaintiff, monitored his condition, consulted with other providers, and exercised professional judgment in determining the appropriate course of care. Dkt. 16 at 7, 9, 11, 13; Dkt. 25 at 8–9.

Specifically, Defendants' evidence demonstrates that, while assigned to Plaintiff's case from June 2024 until May 2025, Defendant Carter assessed Plaintiff's condition based on clinical observations and provided treatment tailored to his needs, such as creating space for Plaintiff to share his frustrations and sharing materials to support interests that Plaintiff indicated gave him purpose. *Id.* at 9, 13. The evidence further shows that, in responding Plaintiff's reported symptoms and incidents of self-harm, Defendant Carter also ensured Plaintiff was assessed by appropriate providers, sought consults, and referred Plaintiff for follow-up care. Dkt. 16 at 5, 7; *see also* Dkt. 25 at 8–9.

Plaintiff's evidence lends further support to the appropriate management of his care by Defendant Carter. For example, records submitted by Plaintiff show that, on the same day Defendant Carter was notified of Plaintiff's complaint that his medication was ineffective and he was at risk of self-harm, she confirmed he had been assessed by his primary clinician and scheduled follow-up care with his primary prescriber. Dkt. 25 at 8. Additional records submitted by Plaintiff further show that, after being notified that Plaintiff engaged in self-harm in December 2024, Defendant Carter confirmed he was seen by his primary clinician and deferred him to his primary therapist for follow-up. *Id.* at 9. Again, this evidence does not show that Defendant Carter ignored Plaintiff's mental health needs, but rather reflects her attentive management of Plaintiff's care.

Medical records submitted by Plaintiff demonstrate he fractured his right hand in March 2025. *Id.* at 10–12. But this evidence establishes only that Plaintiff injured his right hand and that

REPORT AND RECOMMENDATION - 13

he reported the injury was self-inflicted; these records do not show that Defendant Carter was aware of an imminent risk of self-harm at that time, that she had the opportunity to respond and failed to respond to such a risk, or that she otherwise engaged in intentional conduct causing Plaintiff's injury. *See, e.g.*, *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (noting that prison staff are not required to take perfect or even reasonable action in response to mental health concerns but instead the inmate must show staff recklessly or intentionally disregarded an acute risk of serious harm).

The Court notes Plaintiff's allegations that Defendant Carter failed to prevent incidents of self-harm on multiple other occasions. *See* Dkt. 12. However, these allegations in Plaintiff's unverified complaint are not competent evidence sufficient to create a genuine dispute of material fact as to whether Defendant Carter acted with deliberate indifference to his medical needs. *Soto v. Unknown Sweetman*, 882 F.3d 865, 872–73 (9th Cir. 2018). Thus, absent evidentiary support demonstrating specific instances of deficient care, the allegations in the second amended complaint do not overcome Defendants' summary judgment showing.

Plaintiff additionally argues that, if permitted to conduct discovery, he could obtain evidence demonstrating that "Defendants" were aware of his serious mental health needs and denied his requests for help on "8 occasions," resulting in his broken hand. Dkt. 25 at 5. To the extent Plaintiff seeks relief under Rule 56(d), the Court finds further discovery would not preclude summary judgment. *See Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). The present record already demonstrates that Defendant Carter was aware of Plaintiff's mental health concerns and history of self-harm. *See* Dkt. 16 at 5, 7, 9, 13; Dkt. 25 at 8–9. In light of the care provided, further evidence that Defendant Carter was aware Plaintiff posed a risk of self-harm would not demonstrate deliberate indifference. Moreover, Plaintiff's disagreement with Defendant Carter's clinical judgments regarding the severity of his condition

REPORT AND RECOMMENDATION - 14

and the appropriate level of intervention are insufficient to establish deliberate indifference under the Eighth Amendment. *See Toguchi*, 391 F.3d at 1057–60.

In sum, the record does not support a finding that Defendant Carter acted with the kind of "obduracy and wantonness" required for a claim of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Rather, the evidence reflects that Defendant Carter fulfilled her duties to provide care as a psych associate and to facilitate Plaintiff's access to further care by his primary clinician, therapist, and prescriber. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (individual liability analysis in § 1983 actions must be based on the duties and responsibilities of each defendant).

Accordingly, Plaintiff fails to produce evidence sufficient to create a genuine dispute of material fact as to whether Defendant Carter acted with deliberate indifference to Plaintiff's serious medical needs. Because there is not genuine dispute of material fact as to whether she violated Plaintiff's constitutional rights, Defendant Carter is entitled to qualified immunity and Plaintiff's § 1983 claim against this defendant fails under the standards governing summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.      Defendant Roman**

Defendants next argue that Plaintiff's § 1983 claim against Defendant Roman fails at the pleading stage. Dkt. 13 at 4–5.[2] In particular, Defendants argue Plaintiff has not pled facts sufficient to show Defendant Roman's personal participation in any alleged constitutional violation beyond her role in the administrative grievance process. *Id.* Plaintiff argues that

---

[2] For the first time in their reply, Defendants argue there is "no evidence" to support Plaintiff's claims against Defendant Roman. Dkt. 27 at 2–3. To the extent this argument seeks summary judgment rather than dismissal of Plaintiff's claims against Defendant Roman, the Court will not consider this new argument Defendants have raised for the first time in their reply.

REPORT AND RECOMMENDATION - 15

Defendant Roman had knowledge of his risk of self-harm through the administrative grievance process and is thus liable for her alleged failure to take measures to prevent it. Dkt. 25 at 2.

### 1. Applicable Law

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *See Leer*, 844 F.2d at 633. Thus, the causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he or she was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

### 2. Analysis

In his second amended complaint, Plaintiff alleges that Defendant Roman was personally involved in deliberate indifference to his medical needs for her role in denying Plaintiff's administrative grievances on the grounds that Defendant Carter was providing appropriate mental health care. Dkt. 12 at 5–6. Plaintiff's allegations, taken as true, establish only that Defendant Roman reviewed and responded to Plaintiff's administrative grievances.

The Ninth Circuit has made clear that participation in the grievance process, without more, does not give rise to § 1983 liability. *Peralta*, 744 F.3d at 1086 (finding prison administrator was not liable for deliberate indifference based solely on his role in processing administrative grievances that were also reviewed by medical personnel). Moreover, to state a deliberate indifference claim, a plaintiff must plead facts sufficient to show a defendant knew of and purposely disregarded an excessive risk to the plaintiff's health and safety. *See Farmer*, 511 U.S. at 837.

Plaintiff does not allege facts demonstrating Defendant Roman's knowledge or participation beyond the administrative grievance process. Plaintiff does not, for example, allege facts demonstrating that Defendant Roman personally participated in his clinical care, that she was qualified to second-guess the care rendered, or that Defendant Roman had the ability to intervene and prevent a particular incident of self-harm. Even assuming Defendant Roman, a member of the administrative staff, was capable of performing emergent mental health interventions or otherwise capable of mitigating Plaintiff's risk of self-harm, Plaintiff also fails to allege facts showing that Defendant Roman was aware of a substantial and imminent risk of harm to Plaintiff at a particular time when she could have acted to prevent it. In short, the second amended complaint does not include facts showing Defendant Roman had more than a general awareness that Plaintiff posed a risk of self-harm or that she intentionally disregarded a reasonable opportunity to intervene.

Finally, Plaintiff does not allege facts showing that, in denying his grievances, Defendant Roman prevented him from making his "medical problems known to the medical staff." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). Although Plaintiff allegedly disagreed with how his grievances were handled by Defendant Roman, disagreement alone is not enough to establish deliberate indifference. *Simmons v. G. Arnett*, No. 20-55043, 2022 WL 3906207, at

REPORT AND RECOMMENDATION - 17

*5 (9th Cir. Aug. 31, 2022) ("[A]n inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim.").

Accordingly, Plaintiff fails to state a plausible claim for deliberate indifference against Defendant Roman and his § 1983 claim against this defendant fails under the standards put forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 3. Dismissal Without Leave to Amend

Furthermore, the Court notes that Plaintiff has previously been advised of the requirement to allege personal participation by each individual defendant named in his § 1983 complaint and of the requirements for stating a deliberate indifference claim. *See* Dkt. 5. Plaintiff was granted the opportunity to cure his pleadings through amendment, but he has failed to do so with respect to Defendant Roman. Thus, the Court recommends Plaintiff's claim against Defendant Roman be dismissed without leave to amend. *See Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[B]efore dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." (cleaned up)).

### IV. CONCLUSION

For the stated reasons, Plaintiff has failed to state a viable § 1983 claim against Defendant Roman and has failed to rebut Defendants' summary judgment showing that Defendant Carter provided constitutionally sufficient mental health treatment in response to Plaintiff's medical needs. Therefore, the Court recommends Defendants' combined motion to dismiss and for summary judgment (Dkt. 13) be granted and this action be dismissed with prejudice and without the opportunity to amend.

REPORT AND RECOMMENDATION - 18

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 17, 2026**.

Dated this 26th day of May, 2026.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19